UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MILTON  H. POPICK,

                              **REPORT AND**
                              **RECOMMENDATION**

                    Plaintiff,
                              09-CV-386
                              (GTS/VEB)

          V.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____


## I. INTRODUCTION

In January of 2008, Plaintiff Milton Popick filed an application for Supplemental Security Income ("SSI") under the Social Security Act.  Plaintiff alleged that he had been unable to work since January of 1992 due to mental illness.  The Commissioner of Social Security denied Plaintiff's application.

Plaintiff commenced this action *pro se* on April 3, 2009, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 22).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for SSI benefits on January 16, 2008, alleging disability beginning on January 1, 1992. (T at 67-69).[1]  The application was denied initially and  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Albany, New York on August 13, 2008, before ALJ Robert Wright.  (T at 13).  Plaintiff, represented by counsel, appeared and testified.[2]  (T at 16-27).   On November 19, 2008, ALJ Wright issued a written decision denying Plaintiff's application for benefits. (T at 8-12).   The ALJ's decision became the Commissioner's final decision on February 12, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 1-4).

Plaintiff, acting *pro se*, timely commenced this action on April 3, 2009.  (Docket No. 1).  The Commissioner interposed an Answer on July 10, 2009.  (Docket No. 12).  The Commissioner filed a Brief on December 23, 2009. (Docket No. 18).  Plaintiff filed a Brief on February 1, 2010. (Docket No. 21).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

[2]Mitchell Spinac, Esq. represented Plaintiff in connection with the administrative proceedings. (T at 8). As indicated above, Plaintiff brings this action *pro se*.

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

administrative proceedings.

## III. DISCUSSION

### A.     Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); <u>see</u> <u>also Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

**1.     Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 16, 2008, the application date. (T at 10).  However, the ALJ concluded that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. (T at 10).  As such, the ALJ ruled that the Plaintiff was not disabled as defined under the Social Security Act and was therefore not entitled to benefits. (T at 11).

As noted above, the ALJ's decision became the Commissioner's final decision on February 12, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 1-4).

**2.     Plaintiff's Claims**

Plaintiff argues that the Commissioner's decision should be reversed.  In his *pro se* submissions, Plaintiff suggests that the employment history set forth in his SSI application is incorrect and may have been intentionally altered.  He also denies claiming an inability to work based on mental illness.  Plaintiff further alleges that he was issued a large check for SSI benefits pursuant to a court order granted by a federal court located in Washington, DC during the 1990s, and that the records of that proceeding have been suppressed. (Docket Nos. 1-3, 14, 20, 21).

### a.    Allegations Concerning Prior Court Order

This Court is mindful that a *pro se* litigant's pleadings and submissions must be construed liberally and interpreted "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir.2006).  Nevertheless, a claim for relief is subject to dismissal if the plaintiff cannot establish "the grounds" upon which his claim rests through factual allegations sufficient "to raise a right to relief above a speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  As noted above, while Plaintiff was represented by counsel during the administrative proceedings, he is acting *pro se* in this action.

During the hearing before the ALJ, Plaintiff's attorney (who was not identified on the transcript)[5], indicated that Plaintiff based his claim for benefits upon a "Federal Court Order," which had apparently been sealed "by the White House . . . ." (T at 15).  Plaintiff testified that "Social services" directed him to apply for Social Security benefits during the early 1990s, which Plaintiff did even though he "always claimed" he was not qualified to

---

[5]The ALJ's decision identified Mitchell Spinac, as Plaintiff's attorney. (T at 8).

6

receive such benefits. Plaintiff stated that he received a check for benefits from Social Security even though he was "not qualified." (T at 22).  Plaintiff thereafter worked on a congressional campaign and was subject to a background check by the FBI.  Plaintiff testified that the background check led to federal litigation in a court based in Washington, DC.  According to Plaintiff, he prevailed in the litigation, with an unidentified federal judge saying that Plaintiff "won the case" and would receive "a big check, add another zero." (T at 22).  Plaintiff avers that the Social Security Administration was ordered to give him the money, but he never received it. (T at 22).

Plaintiff then testified that in or about 2007, his local pastor contacted law enforcement authorities in Washington, DC, who allegedly advised that they found the court order awarding money to Plaintiff and relayed the contents of that order over the telephone, but never provided Plaintiff with a copy. (T at 23).  Plaintiff further indicated that while the order was "public," the remainder of the court record had been sealed because "the White House was involved." (T at 23-24).

The ALJ found Plaintiff's allegations incredible, noting that Plaintiff "was unable to produce any evidence of [the] alleged prior ruling." (T at 11).  Counsel for the Commissioner performed a search using the electronic docket system run by the Administrative Office of the United States Courts (commonly known by the acronym "PACER"), but was unable to locate any record of a case involving Plaintiff.  This Court likewise conducted a search and did not find any indication of federal litigation involving Plaintiff, other than the instant case.  This Court also conducted a search of published federal cases using the database furnished by WESTLAW, which did not yield any evidence of another case involving Plaintiff.

Of course, if the case was actually sealed, as alleged by Plaintiff, one would not expect it to appear on public databases.  However, Plaintiff provided no evidence whatever to substantiate any portion of his rather incredible claims.  Indeed, even if the court records had been sealed by White House officials or court personnel, one would expect that Plaintiff could provide some further explanation or evidence concerning why a federal court would order the Social Security Administration to pay damages or benefits.  Likewise, there is no evidence to substantiate Plaintiff's claim that the employment history contained in the administrative record was tampered with.  Accordingly, this Court finds no reversible error in the ALJ's decision to discount the credibility of Plaintiff's allegations in this regard.

### b.    Evidence Concerning Mental Impairment

In an initial interview completed in January of 2008 in connection with Plaintiff's application for SSI benefits, Plaintiff claimed that he suffered from mental illness and had "difficulty working with others." (T at 85).  The interviewer noted that Plaintiff seemed "well" through much of the interview and was able to answer most of the questions. (T at 83).  However, the interviewer indicated that Plaintiff appeared "to have trouble separating reality from fantasy." (T at 83).  In a written document submitted to the State Office of Disability Determination, Plaintiff repeatedly stated that he was not disabled. (T at 93-109).

There was an indication that Plaintiff received counseling from Ulster County Mental Health. (T at 88).  Further investigation revealed that Plaintiff had been assessed by Ulster County, but the case was closed after Plaintiff "clearly stated that he did not have a mental illness and was invested in working." (T at 111).  A social worker from Ulster County assessed Plaintiff, noted that he denied any mental disability and claimed he could work. (T at 123).   The social worker opined that Plaintiff "would need a much more

comprehensive and detailed evaluation to assess possible mental illness." (T at 123).  She found moderate limitations with regard to Plaintiff's mental functioning, but indicated "unknown" with regard to whether Plaintiff had any limitation as to work activities. (T at 124).

In March of 2008, Dr. Alex Gindes performed a consultative psychiatric evaluation. Dr. Gindes reported that Plaintiff denied any history of mental health treatment. (T at 128). Likewise, Plaintiff denied any symptoms of clinical depression, anxiety disorder, bipolar disorder, formal thought disorder, and cognitive disorder. (T at 128).  Dr. Gindes found Plaintiff "cooperative, but also rather evasive," and noted that Plaintiff was "quite defensive" and seemed to have "below adequate" social skills. (T at 129).  Plaintiff appeared to demonstrate "good" insight and judgment and reported an ability to engage in a broad array of activities of daily living. (T at 130).

Dr. Gindes opined that Plaintiff could follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; perform complex tasks independently; and make appropriate decisions. (T at 130).  Dr. Gindes concluded that Plaintiff could appropriately deal with stress, but was not always able to adequately relate with others. (T at 130).  He noted that Plaintiff's "difficulties may be caused by underlying character pathology." (T at 130).

In summary, Dr. Gindes diagnosed personality disorder, NOS, with schizoid features.  However, he concluded that the results of his examination did not "appear to be consistent with any psychiatric or cognitive problems that would significantly interfere with [Plaintiff's] ability to function on a daily basis." (T at 130).  Dr. Gindes recommended that

9

Plaintiff seek employment and described Plaintiff's prognosis as "[g]ood, given an absence of clearly debilitating psychiatric symptoms." (T at 130).

Plaintiff's records were reviewed by a non-examining State Agency review consultant, who indicated a diagnosis of "Personality disorder NOS with schizoid features." (T at 141).  The consultant found that the disorder imposed mild limitations on Plaintiff's activities of daily living, moderate difficulties with respect to maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (T at 144).  The consultant found no evidence of limitation with regard to understanding and memory; moderate limitation with respect to completing a normal workday and workweek, and moderate limitation in terms of social interaction. (T at 148-49).  In sum, the consultant found that Plaintiff could understand and remember instructions; sustain attention and concentration for tasks; related adequately with others, and adapt to change. (T at 150).

During the administrative hearing, Plaintiff testified that he engages in various social pursuits and activities of daily living, including active participation in his church. (T at 20-21).

As noted above, the ALJ found that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment and thus rejected Plaintiff's claim for benefits without proceeding any further with the sequential evaluation process.  (T at 10-11).  Thus, the ALJ did not employ the "special technique" used to assess the severity of mental impairments.[6]

---

[6]When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's

The consultative examiner and non-examining review consultant diagnosed personality disorder, NOS, with schizoid features, and identified at least some limitations arising from that condition. (T at 130, 141).  The ALJ afforded "great weight" to the consultants' findings and found them "well-supported by the evidentiary record as a whole." (T at 11).  However, the ALJ discounted Dr. Gindes's "suggestion of a personality disorder" because it appeared "to be based purely on [Plaintiff's] subjective history and [did] not constitute objective evidence of a medically determinable impairment." (T at 11).

This Court finds that the ALJ erred with regard to this aspect of his decision.

First, the consultative examiner did not "suggest" personality disorder, he diagnosed it. (T at 130).

Second, the Second Circuit has held that a patient's complaints or reports of his history are "an essential diagnostic tool." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir.2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir.2003)) (referring to "a patient's report of complaints, or history, as an essential diagnostic tool.").  As such, the ALJ should not have been so quick to dismiss Dr. Gindes's diagnosis because it may have been based on Plaintiff's self-reports.

---

functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).  These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1).

The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).  If the mental impairment is found to be severe, at the third step of the review, the ALJ must consider whether the claimant's mental impairments meet or medically equal of the listed impairments.  If the impairments do meet or medically equal one of the impairments set forth in the Listings, the claimant will be found to be disabled. If not, the ALJ is then required to assess the claimant's residual mental functional capacity. § 404.1520a(d)(3).

Third, Dr. Gindes's diagnosis was quite likely based, in part, on his observation of Plaintiff during his examination and not "purely" on Plaintiff's subjective history, as the ALJ suggests. Indeed, given that Plaintiff frequently denied mental illness, it is possible that the consultant examiner diagnosed personality disorder based upon observed abnormalities of behavior, rather than any subjective statement by Plaintiff. See 20 C.F.R. 416.928 (b)("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception.").

Fourth, the ALJ was quite ready to rely on Plaintiff's subjective statements when Plaintiff denied that he suffered from mental illness (T at 11), but then discounted Dr. Gindes's assessment because it may have been based upon Plaintiff's subjective statements. Lastly, the ALJ does not appear to have accounted for the fact that Plaintiff's rather fantastic claims concerning a White House cover-up and a prior court case might themselves be evidence of an impairment.

Accordingly, this Court finds that a remand is necessary for reconsideration of the evidence in light of the concerns outlined above. It should be noted that the Commissioner may well conclude that Plaintiff is not entitled to benefits because, for example, Plaintiff's medically determinable impairment does not rise to the level of a "severe" impairment under the Social Security Act or that Plaintiff does not otherwise satisfy the requirements of being disabled under the Act.

However, the question presented here is whether substantial evidence supports the ALJ's conclusion that there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. Given (1) the consultative examiner's

12

diagnosis, which was also noted by the State Agency review consultant; (2) the evidence suggesting difficulty distinguishing between fact and fiction; and (3) Plaintiff's *pro se* status, this Court finds that remand is warranted for reconsideration with regard to the issues identified above.   Moreover, given Plaintiff's evident difficulties, it is suggested that the District Court consider the appointment of *pro bono* counsel to represent Plaintiff in the administrative proceedings on remand.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).   Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).   Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be denied, the decision of the Commissioner be reversed, that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation, and that the

District Court consider the appointment of *pro bono* counsel to represent Plaintiff in the proceedings on remand.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 5, 2012

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 5, 2012

Victor E. Bianchini
United States Magistrate Judge